**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

FREIMAN XAVIEL HAMUI MORALES,

       Petitioner,

v.

LUIS SOTO, *et al.*,

       Respondents.

Civil Action No. 26-6414 (ZNQ)

**OPINION**

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's amended habeas petition challenging his ongoing immigration detention (ECF No. 8) and his motion for a temporary restraining order (ECF No. 2). Following an Order to Show Cause (ECF No. 4), the Government filed a response to the petition (ECF No. 28), to which Petitioner replied (ECF No. 29). For the following reasons, Petitioner's habeas petition will be denied without prejudice, and his motion for a temporary restraining order will be denied as moot.[1]

I.     **BACKGROUND**

Petitioner is a native and citizen of Venezuela. (ECF No. 28-1 at 2.) On or about August 10, 2021, Petitioner crossed the United States border without admission or inspection. (*Id.* at 3.) Petitioner was encountered by border patrol shortly after crossing the border and taken into

---

[1] Also before the Court is a second, separate Order to Show Cause (ECF No. 5) that it issued the same day regarding an evidentiary hearing. That hearing was administratively stayed by the Third Circuit Court of Appeals. (*See* ECF No. 27.) For the reasons set forth below, the Court will also withdraw the second Order to Show Cause.

custody. (*Id.*)  On August 12, 2021,[2] Petitioner was released on an order of recognizance and enrolled in an alternative to detention program.  (*Id.*)  Petitioner thereafter remained at liberty in the United States.  On December 5, 2024, Petitioner was issued a notice to appear which charged him with being removable as an alien present in the United States who had not been admitted or paroled.  (*Id.* at 6.)  Petitioner was not taken back into custody at that time, however.  (*Id.*)

On January 5, 2026, he was arrested in Miami Beach, Florida, on drug charges.  (*Id.* at 4.)  The Florida criminal court withheld adjudication of those claims, and sentenced Petitioner to a two-year parole term on these charges. (*Id.* at 15-17.)  On March 24, 2026, however, Petitioner was charged with the fraudulent use of credit cards and theft charges.  (*Id.* at 19-20.)  Petitioner was ultimately charged with petit theft by way of an information on May 28, 2026.  (*Id.* at 28-30.)  That charge remains pending at this time.  (*Id.*)

Most if not all of the information regarding Petitioner's criminal history was not presented to the Court at the time the Court entered its order directing the Government to show cause why Petitioner should not be released.  Petitioner's recent criminal history, only now made available, paints a decidedly different picture of Petitioner and his current period of immigration detention than what the parties previously provided to the Court.

Following his arrest on the fraud and theft charges in March 2026, Petitioner was referred to immigration officials by the Florida jail in which he was housed.  (*Id.* at 3.)  Petitioner was taken into immigration custody on March 24, 2026, and transferred to a Florida immigration detention facility on March 29, 2026.  (*Id.* at 3, 23-25.)  Petitioner was thereafter transferred to the Delaney

---

[2] Petitioner's immigration records indicate that Petitioner's release occurred on August 12, 2022, but the Government clarifies that this release occurred "two days" after his initial apprehension on August 12, 2021.  (*See* ECF no. 28-1 at 3, *cf.* ECF No. 28 at 1.)  The 2022 date thus appears to be a typo, and the Court construes the record in accordance with that impression.

Hall Detention Facility in Newark, New Jersey on May 8, 2026.  (*Id.* at 24.)  Following the scheduling of a hearing in this matter on the conditions Petitioner faced in Delaney Hall, Petitioner was transferred to the Elizabeth Detention Center in Elizabeth, New Jersey, on June 5, 2026.  (*Id.* at 25.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.    DISCUSSION

In his habeas petition, Petitioner contends that his continued detention without an individualized bond determination is unlawful and violates his rights to Due Process.  The Government argues, however, that Petitioner is properly subject to mandatory detention under 8 U.S.C. § 1226(c)(1) in light of his pending theft charges in Florida.

Pursuant to 8 U.S.C. § 1226(c)(1)(E), the Government is required to take into custody and detain any alien who is inadmissible and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense" upon their release from criminal detention "without regard to whether the alien is release on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  Aliens subject to any of the provisions of § 1226(c) are subject to mandatory detention throughout their removal proceedings, and by its terms, the statute

does not provide for a bond hearing or for the release of an alien subject to its terms except in very limited witness protection circumstances not applicable here. *Jennings v. Rodriguez*, 583 U.S. 281, 304 (2018). The statute thus requires the Government to detain aliens with qualifying charges or convictions until "the conclusion of their removal proceedings" in the form of a final order either granting relief or directing the alien's removal from the United States. *Id.* at 305-06.

The Government's position prevails here. The record in this matter clearly indicates that Petitioner is currently charged with a petit theft offense in Florida, and those charges remain pending at this time. As Petitioner therefore is "charged with" committing acts which "constitute the essential elements of" a theft or larceny offense, he is clearly subject to mandatory detention throughout his removal proceedings pursuant to 8 U.S.C. § 1226(c)(1)(E). As Petitioner is subject to mandatory detention, he is not entitled to a bond hearing, nor does he have a statutory right to release from detention unless and until his removal proceedings have fully concluded. *Jennings*, 583 U.S. at 304–06. Petitioner's continued detention without a bond hearing or individualized determination of his flight risk or danger is thus lawful under the statute.

Petitioner also argues, however, that his detention, even if lawful under the applicable statute, violates his right to Due Process. In *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–12 (3d Cir. 2020), the Court of Appeals for the Third Circuit held that while an alien may be subject to mandatory detention under § 1226(c), he may still be entitled to a bond hearing if he can show that his detention under the statute has become so prolonged that the continued detention without a bond hearing has become arbitrary, and the statute therefore violates the alien's right to Due Process as applied to him under the circumstances. In determining whether detention has become so prolonged as to be arbitrary, courts must look to the length of the alien's detention, the likelihood that detention will continue for a considerable period of time, the reasons

for any delay in the underlying removal proceedings, and whether the alien's conditions of confinement are "meaningfully different . . . from criminal punishment." *Id.* at 211. Where the balance of these factors indicates that an alien's prolonged detention has become arbitrary, the alien will be entitled to a bond hearing at which the Government bears the burden of proving that the alien is a danger or a flight risk by clear and convincing evidence. *Id.* at 212–14.

Although the Court of Appeals declined to adopt a specific bright line rule as to when detention would become suspect and subject to evaluation under this standard in *German Santos*, the Court of Appeals noted that the Supreme Court previously rejected a facial challenge to detention under the statute which had lasted five-and-a-half months, and observed that detention will often become unreasonable at some point between six months and one year. *Id.* at 211; *see also Demore v. Kim*, 538 U.S. 510 529–31 (2003); *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473–78 (3d Cir. 2015), *abrogated on other grounds by Jennings*, 583 U.S. 281. Thus, detention will in the ordinary course have to at least crest the five and a half months discussed in *Demore* before it can be said to be so prolonged to warrant an as applied challenge to the statute under the Due Process Clause — and will often only become arbitrary after detention has lasted between six months and a year.

In this matter, Petitioner has been in mandatory immigration detention for just over two months — since March 29, 2026. His detention is thus far short of the five and a half months which the Supreme Court found comported with Due Process in *Demore*, and he has been detained pending removal proceedings for far less than the between six months and a year which the Court of Appeals has suggested will generally call continued detention without a bond hearing into question. *See, e.g., Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433–34 (3d Cir. 2026) (detention under 1226(c) "becomes more and more suspect after five months and in

Page 5 of 9

most cases will become "unreasonable sometime between six months and one year"). As Petitioner has been detained for just over two months under § 1226(c), his detention has not become so prolonged as to be arbitrary, and continued detention without a bond hearing does not at this point amount to an unconstitutional application of the statute to Petitioner under the Due Process clause. Petitioner's challenge to his continued detention without bond is thus premature at this time and must be denied without prejudice.

In addition to his challenge to his continued detention without bond, Petitioner also raised in this matter a claim that the conditions of confinement Petitioner faced in Delaney Hall were sufficiently harsh to serve as a stand-alone basis for his release from detention in that facility. In response to the Court's scheduling of an evidentiary hearing to evaluate this claim, however, the Government transferred Petitioner to a different detention facility in New Jersey, and therefore argues that Petitioner's conditions of confinement claim is now moot as it addressed only Delaney Hall, a facility in which Petitioner is not now detained and is unlikely to return to in the future. *See Lomeu v. Soto*, Civ. No. 25-16589, 2025 WL 2981296, at *3 (D.N.J. Oct. 23, 2025). At the time the Court determined an evidentiary hearing was still warranted, the Government had not made any assurances that Petitioner was unlikely to be returned to Delaney Hall — now the Government has, and based upon the record before it, the Court accepts that representation. As a district court cannot "decide questions that cannot affect the rights of litigants in the case before them," *id.* (quoting *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), and as Petitioner is no longer subject to the challenged conditions at Delaney Hall, and there is no good reason in the current, more developed state of the record to believe he is likely to be returned to that facility, this Court must now agree that the conditions claims are now moot and must be dismissed without prejudice as such.

The Court notes, however, that it has concerns with respect to the lengths to which the Government went to avoid the evidentiary hearing.  The sequence of events is telling.  Upon its initial review of the petition, the Court found that an evidentiary hearing was required because Petitioner had asserted in his habeas petition that "he [had] been subjected to unlawful conditions of confinement at Delaney Hall, including inadequate food, sanitation issues, overcrowding, limited medical care, restrictions on communications, unsafe living arrangements, and exposure to pepper spray."  (ECF No. 5 at 1.)

In response, the Government first sought an extension to its deadline to brief the Order to Show Cause for the evidentiary hearing for the stated purpose of permitting it "to provide a more fulsome response which, we respectfully submit, would benefit the Court and all parties."  (ECF No. 13 at 1.)  The Court granted that extension to the Government's deadline on the basis of that representation.

Nine minutes before the Government's briefing elapsed, it filed a letter that shifted tack.  It did not respond to the Court's preliminary finding that an evidentiary hearing was warranted, but instead asserted that the hearing was now moot.  (ECF No. 15.)  Specifically, the Government asserted that the hearing was moot because the parties had reached a settlement in principle and a stipulation of dismissal was forthcoming.  (*Id.*)

The Court, without any information as to the terms of the settlement, ordered the hearing to nevertheless proceed because it was left with more questions than answers: What were the terms of the purported settlement?  Had the Government agreed to release Petitioner?  When?  If not, had the parties agreed to have Petitioner transferred out of Delaney Hall?  And if so, was there a likelihood that the Petitioner could be transferred back to Delaney Hall without any change of

circumstance?  And if so, could the Government effect the transfer in the next hour, next day, or next week?

The Court's host of questions as to the settlement became moot three hours later —after 7 p.m.— when Petitioner filed a letter reporting that he had withdrawn from his settlement position. (ECF No. 17 at 2.)  He requested that the evidentiary hearing move forward.  (*Id*.)

Shortly before 10 a.m. the next day, the Government switched tacks again.  It announced it had transferred Petitioner from Delaney Hall to Elizabeth Detention,[3] which mooted the hearing under a different theory: Petitioner was no longer detained at the facility in dispute.  (ECF No. 19.) To be clear, for a second time the Government invoked mootness rather than respond to the Court's preliminary finding that an evidentiary hearing was warranted.

While this case is reaching its conclusion on its merits, the Court cautions the Government against resorting to last-minute, temporary transfers as a means to evade necessary and appropriate judicial review of claims raised by immigration detainees.  Petitioner's conditions claims are being dismissed as moot at this time based solely on the Court's acceptance of the Government's clear assertion that Petitioner is not likely to return to Delaney Hall.  In short, the Court is extending some measure of trust in the Government and its good faith — with a caution that any breach would be unwise.

---

[3] This district recently instituted automatic, district-wide, no-transfer orders in immigration habeas cases.  This reduced the burdens the transfers put on petitioners, their counsel, and their family and responded to the Government's arguments that a transfer of a petitioner out of this district divested this Court of jurisdiction.  The no-transfer orders bar transferring immigration habeas petitioners out of New Jersey.  Because both facilities at issue in this case are in New Jersey, the transfer from Delaney Hall to Elizabeth Detention was not a violation of the Court's no-transfer order.  In the absence of any explanation from the Government, however, it remains unclear to the Court to what degree Petitioner's transfer to Elizabeth Detention was motivated by the Government's demonstrated desire to avoid an evidentiary hearing.

Still, for avoidance of doubt, should Petitioner be returned to Delaney Hall in the near future, Petitioner is free to move to reopen this matter to the extent he wishes to pursue any specific allegations concerning the conditions of his confinement.  The dismissal of Petitioner's conditions claim in this habeas matter is also without prejudice to Petitioner's ability to file a civil rights action seeking damages based on those conditions in the future.

## IV.    CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED WITHOUT PREJUDICE**, and Petitioner's conditions of confinement claims are **DISMISSED WITHOUT PREJUDICE** at this time.  The Order to Show Cause (ECF No. 5) will be **WITHDRAWN** and Petitioner's motion for a temporary restraining order (ECF No. 2) will be **DENIED AS MOOT**.  An appropriate order follows.

Date: June 12, 2026

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
